**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELIZABETH BASS, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 06-5986 (GEB) |
| | : | |
| v. | : | |
| | : | |
| PALISADES COLLECTIONS, L.L.C., | : | **MEMORANDUM OPINION** |
| LDG FINANCIAL SERVICES, L.L.C., | : | |
| | : | |
| Defendants. | : | |

**BROWN, Chief District Judge**

This matter comes before the Court upon the following three motions **(1-3**, below**)** filed by the parties:

**(1)**  Motion for summary judgment filed by Elizabeth Bass ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56 [DOCKET # 16];

**(2)**  Motion for summary judgment filed by LDG Financial Services, L.L.C. ("Defendant" or "LDG") pursuant to FED. R. CIV. P. 56 [DOCKET # 17];

**(3)** Motion for summary judgment filed by Palisades Collections, L.L.C. ("Defendant" or "Palisades") pursuant to FED. R. CIV. P. 56 [DOCKET # 24].

The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to FED. R. CIV. P. 78.  For the reasons set forth below, the Court will deny Plaintiff's motion and grant summary judgment to both LDG and Palisades on all of Plaintiff's claims.

I.  **BACKGROUND**

Plaintiff filed the instant action in an effort to secure her rights under 15 U.S.C. §§ 1692(a-n), the Fair Debt Collection Practices Act ("FDCPA").  (Compl.)  On or about May 25, 2005, Plaintiff received a telephone call from an agent of LDG, a debt collection firm, in which LDG demanded payment of $1,183 for an overdue AT&T Wireless bill (the "debt").  (Compl. at ¶ 4; LDJ Mot. Summ. J. at 5)  This cellular telephone bill, which apparently originated from an account registered in Michigan, was either fraudulent, or was attributed to Plaintiff by mistake.  (Pl.'s Mot. Summ. J. Ex. F ("Police Report"))  The following day, May 26, 2005, Plaintiff filed a report with her hometown Haddonfield, N.J. Police Department, in which she stated that an unknown individual had unlawfully used her name and social security number to obtain a cellular telephone from AT&T Wireless.  (*Id.*)  After filing this police report, Plaintiff promptly contacted LDG and informed them of the report and its contents.  (Compl. at ¶¶ 6,7; LDG Mot. Summ. J. at 5.)  Plaintiff then mailed LDG a copy of the police report, which was received on June 14, 2005.  (Compl. at ¶ 7; LDJ Mot. Summ. J. at 3, ¶ 8.)  After receiving the police report, LDG closed Plaintiff's account and electronically returned the debt to AT&T Wireless.  (LDG Mot. Summ. J. at 3, ¶ 9.)  The parties contest whether LDG effectively communicated to AT&T Wireless that Plaintiff's debt was disputed.  In either case, it is undisputed that LDG had no further contact with Plaintiff until this action commenced.

In early January, 2006, Plaintiff received a letter from Palisades, also a debt collection firm, stating that Palisades had acquired the aforementioned debt from AT&T Wireless.  (Pl.'s Mot. Summ. J. Ex. M ("Palisades Letter 1/5/06"))  That letter demanded payment and threatened to report Plaintiff to the various national credit bureaus if she failed to satisfy the debt.  (*Id.*)  On

January 30, 2006, Plaintiff's counsel sent a letter to Palisades that stated, "Mrs. Bass disputes the debt alleged to be owed to AT&T Wireless . . . .  As Palisades may be aware, Mrs. Bass previously had provided evidence to a prior debt collector [LDG] showing that Mrs. Bass disputed this alleged debt and, in fact, did not incur this alleged debt."  (Pl.'s Mot. Summ. J. Ex. N ("Badman Letter") at 1-2.)   Palisades responded to Plaintiff's counsel's letter on March 29, 2006, and stated, "[Palisades has] received your correspondence requesting validation of debt.  [Palisades has] ordered your documentation and will provide [Plaintiff's counsel] with a copy upon receipt.  Please be advised this process could take up to 90 days."  (Pl.'s Mot. Summ. J. Ex. O ("Palisades Letter 3/29/06"))  Submissions before the Court indicate that, after Palisades sent this letter, the parties did not correspond again until after this action commenced.

On December 14, 2006, mindful of the one-year statute of limitations governing actions under the FDCPA, and having not corresponded with Palisades since the March 29, 2006 letter, Plaintiff filed the complaint in this action.  (Compl.)  On December 20, 2006, less than a week after Plaintiff filed her complaint, Palisades informed Plaintiff that they had received additional documentation of her debt, and that they considered Plaintiff's debt validated.  (Pl.'s Mot. Summ. J. Ex. O ("Palisades Letter 12/20/06"))  The submissions before this Court indicate that Palisades has made no further attempts to collect the debt since that letter was sent.

Based on these facts, Plaintiff makes the following claims against LDG and Palisades in her complaint:

### 1.  Plaintiff's Claim Against LDG Financial Services, L.L.C.

In essence, Plaintiff alleges that LDG failed to effectively communicate the disputed status of Plaintiff's debt to AT&T Wireless when LDG returned the debt to AT&T on July 1,

3

2005. (Compl. at ¶ 31.) As a result of LDG's alleged failure to communicate the debt's disputed status, Plaintiff claims that Palisades was sold the debt without knowledge that it was disputed. (*Id.*) Plaintiff claims that LDG's ineffective communication of the debt's disputed status was a violation of 15. U.S.C. § 1692(e)(8). (*Id.*) As a remedy for this alleged violation of the FDCPA, Plaintiff apparently seeks the full range of damages allowable under 15 U.S.C. § 1692(k). (Compl. at ¶ 33) Plaintiff now moves for summary judgment on her claim against LDG.

LDG, in its answer, asserted numerous affirmative defenses, and now moves for summary judgment on Plaintiff's claim.

### 2. Plaintiff's Claims Against Palisades Collection, L.L.C.

Plaintiff alleges that Palisades "negligently dunned Plaintiff for a debt that defendant knew or should have known was not owed" in violation of 15 U.S.C. §§ 1692(e)(2)(A), 1692(d), and 1692(f). (Compl. at ¶ 35) Plaintiff also alleges that Palisades' failure to provide documentation of the alleged debt within 90 days (the time-frame established in Palisades' letter of March 29, 2006), violated the same provisions of the FDCPA noted above. (Compl. at ¶ 36) Finally, Plaintiff alleges that Palisades' threat to inform various credit agencies if Plaintiff failed to pay the debt is a violation of 15 U.S.C. § 1692(e)(8). (Compl. at ¶ 37) As a remedy for these alleged violations of the FDCPA, Plaintiff apparently seeks the full range of damages allowable under 15 U.S.C. § 1692(k). (Compl. at ¶ 39) Plaintiff now moves for summary judgment on her claims against Palisades.

Palisades, in its answer, asserted numerous affirmative defenses, and now moves for summary judgment on all of Plaintiff's claims.

## II.   DISCUSSION

### A. Legal Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### B. Application

#### 1. Summary Judgment Is Granted To LDG Because Plaintiff's Claim Is Time-Barred

Plaintiff claims that LDG, "directly or indirectly, communicated to Palisades that the Alleged Debt was due and owing without notifying Palisades that the Alleged Debt was disputed, even though LDG knew that the Alleged Debt was not due and owing and was disputed." (Compl. ¶ 31) Plaintiff asserts that these alleged actions, or inactions, by LDG violated 15 U.S.C. § 1692(e)(8). (*Id.*) LDG denies Plaintiff's allegation and argues that this claim is time-barred. (LDG's Mot. Summ. J.) The Court agrees that Plaintiff's claim is time-barred and will grant LDG's motion for summary judgment on that basis.

5

The FDCPA prohibits a debt collector from, "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692(e)(8). The following statute of limitations applies to claims brought pursuant to the FDCPA:

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, *within one year from the date on which the violation occurs*. (emphasis added)

15 U.S.C. § 1692(k)(d).

An application of the undisputed facts of this case to the plain meaning of the statutes cited above obviates the conclusion that Plaintiff's claim against LDG is time-barred. Plaintiff asserts that LDG did not effectively communicate that the debt was disputed when LDG returned it to AT&T. Plaintiff contends that this constituted a "failure to communicate that a disputed debt is disputed" in violation of 15 U.S.C. § 1692(e)(8). LDG asserts, and Plaintiff does not dispute, that LDG returned Plaintiff's debt to AT&T on July 1, 2005, and that LDG closed Plaintiff's account on that date. Based on those undisputed facts, LDG's alleged "failure to communicate that a disputed debt is disputed" must have taken place, if at all, no later than July 1, 2005. Section 1692(k)(d) plainly establishes that the one-year statute of limitations applicable to FDCPA claims begins to run "from the date on which the violation occurs."[1] Therefore, to

---

[1] Plaintiff argues that the applicable statue of limitations begins to run on the date a violation of the FDCPA is discovered. (Pl.'s Opp'n to LDG's Mot. Summ. J. At 2,3.) Plaintiff's interpretation of Section 1692(k)(d) is contrary to the plain language of the statute, which is reproduced above. Plaintiff has failed to identify binding precedent that accords with her interpretation of Section 1692(k)(d), and the Court's own research has revealed none. The Court will therefore apply the statute as it is written.

comply with Section 1692(k)(d), Plaintiff had to file her complaint against LDG by July 1, 2006. She did not file her complaint until December 14, 2006. As a result, Plaintiff's claim against LDG is time-barred, and this Court will grant summary judgment to LDG.

### 2. Summary Judgment Is Granted To Palisades Because It Did Not Violate The FDCPA

In her complaint, Plaintiff alleges that Palisades "negligently dunned Plaintiff for a debt that defendant knew or should have known was not owed" in violation of 15 U.S.C. §§ 1692(e)(2)(A), 1692(d), and 1692(f). (Compl. at ¶ 35) Plaintiff also alleges that Palisades' failure to provide documentation of the alleged debt within 90 days (the time-frame established in Palisades' letter of March 29, 2006), violated the same provisions of the FDCPA. (Compl. at ¶ 36) Finally, Plaintiff alleges that Palisades' threat to inform various credit agencies if Plaintiff failed to pay the debt is a violation of 15 U.S.C. § 1692(e)(8). All of Plaintiff's claims fail as a matter of law.

The relevant sections of the FDCPA are as follows:

(1) 1692(e)(2)(a) states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2)(a) The false representation of - the character, amount, or legal statuts of any debt . . . ."

(2) 1692(d) states, in pertinent part, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

(3) 1692(f) states, in pertinent part, "A debt collector may not use unfair or unconscionable

means to collect or attempt to collect any debt."

(4) 1692(e)(8) states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a debt is disputed."

The correspondence between Plaintiff and Palisades is summarized as follows: (1) on January 5, 2006, Palisades notified Plaintiff that it had acquired her alleged debt from AT&T Wireless. Palisades requested payment, and stated that if Plaintiff failed to pay the alleged debt, Palisades would, "report your account to the various credit bureaus" (Pl.'s Mot. Summ. J. Ex. M ("Palisades Letter 1/5/06")); (2) on January 30, 2006, Plaintiff's counsel sent Palisades a letter that stated, "Mrs. Bass previously had provided evidence to a prior debt collector showing that Mrs. Bass disputed this alleged debt and, in fact, did not incur this alleged debt" (Pl.'s Mot. Summ. J. Ex. N ("Badman Letter") at 1-2.) In that letter, Plaintiff also requested that Palisades verify the debt (*Id.*); (3) on March 29, 2006, Palisades informed Plaintiff that documentation of Plaintiff's account had been ordered, and would be forwarded to Plaintiff upon receipt. Palisades noted that, "this process could take up to 90 days." (Pl.'s Mot. Summ. J. Ex. O ("Palisades Letter 3/29/06")) A few days after Plaintiff filed her complaint, Palisades forwarded documentation of the debt to Plaintiff. Based upon this documentation, Palisades informed Plaintiff that they considered the debt validated despite Plaintiff's counsel's assertion that the debt was erroneous. (Pl.'s Mot. Summ. J. Ex. O ("Palisades Letter 12/20/06")) The parties submissions indicate that

Palisades has not attempted to collect the debt since their letter dated December 12, 2006.

An application of the FDCPA sections cited in Plaintiff's complaint to the parties' correspondence yields the inescapable conclusion that Palisades' actions did not violate the law. Plaintiff's claim that Palisades "knew or should have known" that the debt was disputed is simply not plausible. The entire basis of Plaintiff's claim against Co-Defendant LDG is that LDG failed to inform AT&T Wireless, and Palisades, by proxy, that Plaintiff's debt was disputed. Logically, given her argument against LDG, Plaintiff's claim that Palisades should have had actual or constructive knowledge that the debt was disputed is without merit. Furthermore, Plaintiff's argument that Palisades engaged in conduct that was "false," "deceptive," "misleading," "oppressive," "abusive," "unfair," or "unconscionable," as required by the FDCPA for liability, is unsupported by the record. To the contrary, the parties' submissions indicate that Palisades maintained a tone of respectful professionalism in its limited correspondence with the Plaintiff.

Additionally, Plaintiff cannot credibly argue that Palisades' failure to validate Plaintiff's debt within the 90 day time-frame established in the March 29, 2006 letter violates the FDCPA. 15 U.S.C. § 1692(f), which establishes the proper procedure for debt validation pursuant to the FDCPA, provides no mandatory time-frame in which the debt collector must produce documentation of the debt. The 90 day time-frame established in the March 29, 2006 letter was, therefore, nothing more than a private assurance from Palisades to Plaintiff. While it is uncontested that Palisades failed to provide documentation to Plaintiff within the established time-frame, that failure is not a violation of the FDCPA as a matter of law.

Finally, the record before this Court indicates that this litigation was largely precipitated by Plaintiff's counsel's failure to disclose to Palisades the critical fact that Plaintiff claimed the

AT&T Wireless debt was fraudulent and had filed a police report in the matter. The only correspondence Plaintiff's counsel sent to Palisades prior to commencing this action was the letter dated January 30, 2006. (Pl.'s Mot. Summ. J. Ex. N ("Badman Letter") at 1-2.) In that letter, Plaintiff's counsel effectively communicated that Plaintiff "disputed" the AT&T Wireless debt. Nowhere in that letter, however, did Plaintiff's counsel allude to the fact that the debt was fraudulent, or that Plaintiff had filed a police report alleging identity theft. Plaintiff's counsel's omission of that critical information is puzzling considering the promptness with which Plaintiff had forwarded the police report to LDG the prior year.

Palisades now acknowledges, apparently because of the police report attached to Plaintiff's complaint, that Plaintiff does not owe the AT&T Wireless debt. That fact was made clear during the deposition of Stephen Braun, a vice president with Palisades, who stated under oath that, "we [Palisades] don't think that she owes the money. We think that she filed a police report and her identity was stolen." (Dep. Stephen Braun, p. 38, lines 12-15.) Mr. Braun's statement, paired with the absence of any evidence that Palisades has attempted to collect Plaintiff's debt since the filing of this action, leads to the conclusion that this matter has effectively been settled.

In sum, having reviewed the submissions of the parties in this case, there is no genuine issue of material fact as to whether Palisades violated the FDCPA: Palisades did not. As a result, the Court will grant summary judgment to Palisades on all of Plaintiff's claims.

### III. CONCLUSION

For the reasons noted above, the Court will DENY Plaintiff's motion for summary judgment and GRANT the motions for summary judgment of LDG and Palisades. In doing so,

the Court notes that Palisades has acknowledged that Plaintiff's AT&T Wireless bill is erroneous, and has appropriately discontinued collection efforts.  If Palisades recommences collection efforts, Plaintiff can, of course, file a new action against Palisades under the FDCPA.

An appropriate form of order accompanies this memorandum opinion.

Dated: September 26, 2008

                                                            /s/ Garrett E. Brown, Jr.
                                                    GARRETT E. BROWN, JR., U.S.D.J.